Filed 8/18/15  In re Maryjane R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re MARYJANE R. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B260661<br>(Los Angeles County<br> Super. Ct. No. DK07589) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSICA M.,<br><br>    Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed in part, reversed in part.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

Jessica M. (Mother) appeals from jurisdictional and dispositional orders of the dependency court under Welfare and Institutions Code section 300, subdivisions (a) and (b)[1] with respect to her children, Maryjane R. (born August 2010) and M.M. (born July 2014).[2] Mother contends that the evidence is insufficient to support the jurisdictional findings as to her that her children were at risk of harm based on domestic violence between her and Father and Mother's alleged alcohol abuse.[3] She also contends that the evidence was insufficient to support the court's order to remove the children from her custody. We conclude that the jurisdictional findings as to Mother are not supported by substantial evidence. We therefore reverse the order finding jurisdiction insofar as it based on those allegations. We also reverse the dispositional order removing the children from Mother's custody.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Detention Report*

In August 2014, the Department of Children and Family Services (DCFS) received a referral stating that Mother and Father had an argument during which Mother scratched Father's face and neck while Father was holding M. The caseworker arrived and interviewed Mother, who said the incident was "over and it was just a mistake." Mother denied that Father was holding M. at the time,

---

[1]     Further unspecified statutory references are to the Welfare and Institutions Code.

[2]     M. is mistakenly referred to throughout the record as "[N.]."

[3]     Alfonso R. was identified as Maryjane's biological father, but his whereabouts were unknown throughout the dependency proceedings. Roberto M. was found to be the presumed father of both children and is referred to throughout this opinion as Father. He is not a party to this appeal.

2

explaining that M. had been with a neighbor and Maryjane with maternal grandmother. The caseworker questioned the neighbor, who confirmed that she had been watching M. during the incident. Although the caseworker did not believe her, there was no evidence to prove differently.

Mother and Father refused to speak to the caseworker, whereupon the caseworker explained that law enforcement would be called in order to allow an assessment of the home. Father then gave the caseworker consent to inspect the home. The caseworker found a single bed in the living room, where Father said he slept in order to allow Mother and the baby to sleep undisturbed when he awoke early for work. The caseworker saw a double bed and a crib in the bedroom and "observed appropriate bedding and supplies." Mother explained that Maryjane stayed with maternal grandmother so that the routine of the new baby would not disturb her. Mother was tearful and expressed her fear that the caseworker would take the children away.

The police report of the incident stated that when the police arrived, they observed three long scratches on Father's neck and face. Father initially stated that Mother was responsible, but he subsequently stated that he did it to himself. Mother told the police that they were arguing because Father accused her of cheating. She said that during the argument, she took the baby to the neighbor, told the neighbor to call the police, and returned to confront Father. Although Mother was arrested, the charges were dropped for lack of evidence.

The caseworker required Mother and Father to consent to an Up Front Assessment (UFA), pursuant to which the children would be removed if the parents had another domestic violence incident. The caseworker saw no marks on Maryjane that would indicate abuse or neglect. In a September 2014 visit, the caseworker observed that the parents appeared bonded with each other and

displayed appropriate bonding and attachment with M. The UFA facilitator similarly found that the family was bonded and attached and told the caseworker that Mother and Father were in anger management classes to address the domestic violence issues.

DCFS obtained a sheriff's report indicating that on June 5, 2013, the parents had an altercation after they had been drinking. Father kicked a door, punched a wall, and slapped Mother in the head and face repeatedly. He grabbed her by the hair, dragging her around the apartment, and punched her in the stomach three times. Maryjane was asleep in the bedroom during the altercation (M. had not yet been born). Father ran into Maryjane's bedroom after hearing a knock on the door, and Mother saw him climb out Maryjane's bedroom window.

After receiving this report, DCFS applied for a removal warrant. DCFS removed the children from Mother and Father and placed them with maternal grandmother, explaining that she needed to monitor parental visits.

On September 29, 2014, DCFS filed a petition alleging one count under section 300, subdivision (a) and three counts under subdivision (b). Count a-1 alleged that there was a substantial risk that M. and Maryjane would suffer serious physical harm inflicted nonaccidentally based on Mother and Father's history of violent altercations. The petition cited the August 2014 and June 2013 incidents and stated that Father's violent conduct and Mother's failure to protect the children placed the children at risk of physical harm. The other three counts alleged that the children were at risk of serious physical harm due to (1) Mother and Father's history of violent altercations (count b-1); (2) Mother's inability to care for the children due to her being under the influence of alcohol on June 5, 2013 (count b-2) and her alcohol abuse; and (3) Father's inability to care for M. due to his being under the influence of alcohol on June 5, 2013 and his alcohol abuse (count b-3).

4

At the detention hearing, the court ordered the children detained and ordered monitored visits and drug and alcohol programs. The court ordered the UFA report to be attached to the jurisdiction report.

*Jurisdiction Report*

The dependency investigator interviewed Maryjane (then four years old) on October 23, 2014. Maryjane was clean, groomed, alert, courteous, and eager to show the investigator her home. She denied ever witnessing any fights between Mother and Father. M. was too young to be interviewed, but she was clean, groomed, alert, and had no marks or bruises. Her development was appropriate. The children were still placed with maternal grandmother. The family had no prior dependency court history.

Father stated that the August 2014 and June 2013 incidents were the only times he and Mother had "fought like that." He stated that M. was not present during the August 2014 incident and that the police saw that she was not there. He denied dragging Mother and punching her during the June 2013 incident, but admitted slapping her twice. He explained that they fought because of "jealousy stuff, and because of alcohol, it makes things worse." He stated that they did not drink often, only at parties with their friends, but that they had been drinking prior to the two incidents. Father admitted using marijuana in high school but denied using it any more. Father worked full time and had sufficient income to meet his family's needs. He and Mother met in high school and were not married. They had known each other for about five years and been in a relationship for one to two years. Mother did not attend the meeting.

Maternal grandparents did not know about any violence between Mother and Father and had never seen any injuries. They had never seen any signs of drug use.

5

Paternal grandmother was unaware of any issues between Mother and Father when they stayed at her house. She had never seen Mother appear drunk or under the influence of drugs. Nor had she seen Father drink, get drunk, or use drugs.

The UFA report stated that Mother had not been working since M.'s birth in July 2014, but she planned to return to work at a telemarketing firm and to part-time work cleaning houses. Mother first tried alcohol when she was 16 years old, but she reported no substance abuse problems. She had never used intravenous drugs, overdosed on drugs, or been treated for alcohol or drug abuse. She reported no physical, emotional or sexual abuse and no psychological problems, although she was fearful of DCFS taking her children away. The strengths noted by the assessor included "strong family support from her family and her boyfriend's family, no history of substance abuse, appropriate housing and future employment." The one concern noted by the assessor was Mother and Father's poor judgment in allowing their argument to escalate to the point that the neighbors called the police. The assessor believed Mother had the capacity to provide suitable care for her children and did not need a mental health diagnosis. The assessor recommended that Mother and Father attend couples counseling to learn communication skills.

Father had worked as an air conditioning technician for two years. He first tried alcohol when he was 13 years old, but he did not use drugs, had never overdosed on drugs or been treated for alcohol or drug abuse, and reported no alcohol or drug problems. He had one conviction for assault and was participating in an anger management program. As with Mother, the assessor found that Father's strengths included "stable full-time employment, appropriate housing, no history of substance abuse, and strong family support." The report noted that Father and Mother lived in a safe, appropriate home for their daughter, and that

they received financial assistance and childcare assistance from Father's parents. The assessor found that Father had the capacity to provide suitable care for his daughter and that Father and Mother needed to learn more appropriate ways of communicating. The only concern cited by the assessor was poor judgment in allowing the argument to escalate to the point that the neighbors called the police.

*Jurisdiction Hearing*

The dependency court sustained all the allegations of the petition, stating that there were "at least two police reports [of] domestic violence against one another following use and abuse. . . . These parents appear to this court to be co-dependent on one another and alcohol. . . . It's plain as the nose on my face that when these people engage in drinking, they get argumentative, and they start getting physical with one another, and the drinking is facilitating the domestic violence." The court thus declared the children persons described by section 300, subdivisions (a) through (j), and found under section 361, subdivision (c) by clear and convincing evidence that returning the children to the parents' home created a substantial risk of detriment to the children's safety and there was no reasonable means to keep the children safe. The court removed the children from the parents' custody and ordered monitored visits three times a week, parenting classes, a domestic violence program, and random drug testing. Mother timely appealed.

## DISCUSSION

Mother contends that the court's jurisdictional and dispositional findings are not supported by substantial evidence.[4] We agree.

_____

[4] DCFS contends that Mother lacks standing to challenge the counts sustained against Father. Mother appeals from the findings against her and does not purport to

7

I.      *Jurisdictional Findings*

"'The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' [Citation.] 'Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300' at the jurisdiction hearing. [Citation.] 'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]' [Citation.]" (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) "'Substantial evidence is evidence that is reasonable, credible, and of solid value. [Citation.]' [Citation.]" (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 84.)

A.      *Section 300, subdivision (a)*

In order for a court to find that a child is one described by section 300, subdivision (a), DCFS must establish that "[t]he child has suffered, or there is a

appeal from the counts sustained against Father. "As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings. [Citation.] We nonetheless retain discretion to consider the merits of a parent's appeal [citation], and often do so when the finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [Citation].' [Citations.]" (*In re M.W.* (B258054, July 6, 2015) __ Cal.App.4th __, 2015 Cal.App. LEXIS 659, *14-15 (*M.W.*).) The findings that Mother intentionally hurt and placed her children at substantial risk of serious harm, and that she was incapable of caring for them due to alcohol abuse "are pernicious" and could have other consequences for Mother. (*Id.* at p. *15.) We therefore exercise our discretion to review her claims. (See *id.* at pp. *15-*16; *In re Jonathan B.* (2015) 235 Cal.App.4th 115, 119 (*Jonathan B.*) ["Because the finding that mother intentionally hurt and neglected her children may be used against mother in future dependency proceedings, we reach the merits of mother's appeal."].)

8

substantial risk that the child will suffer, serious physical harm inflicted *nonaccidentally upon the child* by the child's parent or guardian.  For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm."  (§ 300, subd. (a), italics added; see also *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 (*Daisy H.*).)

Count a-1 alleged that the children had suffered, or there was a substantial risk that they will suffer serious physical harm inflicted nonaccidentally by their parent or guardian, based on the June 2013 and August 2014 altercations between Mother and Father.  However, there is no evidence that either M. or Maryjane suffered "serious physical harm inflicted nonaccidentally."  (§ 300, subd. (a).)  DCFS thus was required to show by a preponderance of the evidence that the children were at "substantial risk" of suffering "serious physical harm" inflicted nonaccidentally.  (§ 300 subd. (a); see *Jonathan B., supra*, 235 Cal.App.4th at p. 119 ["There was no evidence the children had suffered 'serious physical harm,' therefore, the Department was required to show that the children were at 'substantial *risk*' of 'suffer[ing] serious physical harm' inflicted nonaccidentally by mother (§ 300, subd. (a)) or caused by mother's failure to protect them (§ 300, subd. (b)(1))."].)

But in the August 2014 incident, the evidence is undisputed that Mother took M. to the neighbor's apartment during her altercation with Father, and the police report did not indicate that M. was present.  Moreover, Maryjane was not present because she was at maternal grandmother's.  Thus, there is no evidence that either child was ever at risk of any harm.

In the June 2013 incident, Maryjane was asleep in the bedroom during the incident (M. had not yet been born). Father climbed out Maryjane's bedroom window, but there is no evidence that Maryjane was at risk of harm from that act.

Under these circumstances, neither the August 2014 nor June 2013 incident establish that M. or Maryjane suffered serious physical harm inflicted nonaccidentally or that they were at substantial risk of serious future injury inflicted nonaccidentally. (See *In re Isabella F.* (2014) 226 Cal.App.4th 128, 139 [concluding that mother's one-time conduct hitting daughter in the face and grabbing her by the neck was not sufficient to find jurisdiction under subdivision (a), citing cases finding conduct to be sufficient, such as *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [mother struck three-year-old child on stomach and forearms with a belt, leaving deep, purple bruises]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1433 [father struck daughter with such force that he dislocated her shoulder]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1645 [mother beat son with belt and electrical cord, hitting him seven times on each of three occasions and causing bruises, linear red marks, welts, and broken skin].) (See also *Daisy H.*, *supra*, 192 Cal.App.4th at p. 716 [reversing jurisdictional finding under section 300, subdivision (a) where "[t]here was no evidence that Father ever intentionally harmed any of his children or that the children were at risk of intentional harm."].) The jurisdictional finding against Mother under section 300, subdivision (a) accordingly is reversed.

B.    *Section 300, subdivision (b)*

Count b-1 of the petition relied on the August 2014 and June 2013 incidents to allege that Father's violent conduct and Mother's failure to protect the children endanger the children and place them at risk of physical harm. Count b-2 alleged

that, on June 5, 2013, Mother was under the influence of alcohol, rendering her incapable of providing regular care for the children.

"[T]here are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm. [Citations.]" (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724–725 (*Rebecca C.*).) "[DCFS] has the burden to prove the jurisdictional facts by a preponderance of the evidence. [Citations.]" (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1014.)

### 1.     *Count b-1*

"Jurisdiction under section 300, subdivision (b)(1) requires proof that a child 'has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor. . . .'" (*M.W.*, *supra*, __ Cal.App.4th __, 2015 Cal.App. LEXIS 659, *17.) "Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue *and* that it directly harmed the child physically or placed the child at risk of physical harm. [Citations.]" (*Daisy H.*, *supra*, 192 Cal.App.4th at p. 717, italics added.)

DCFS has pointed to no evidence that the violence between Mother and Father is ongoing or likely to continue. Nor is there any evidence that either M. or Maryjane was directly harmed physically or placed at risk of physical harm during either of the two incidents. Maternal grandparents and paternal grandmother had

never seen any violence between Mother and Father. The children were clean, groomed, showed no signs of abuse or neglect, and were bonded to the parents.

As we have explained, in the June 2013 incident, Maryjane was sleeping when Father climbed out the window in her bedroom, and there is no evidence that she was at risk of harm. As for the August 2014 incident, the evidence is undisputed that neither child was present: Maryjane was at maternal grandmother's, and Mother took M. to the neighbor's. This case therefore is unlike cases in which there was evidence of harm to the children based on domestic violence in their presence. For example, in *In re T.V.* (2013) 217 Cal.App.4th 126, the five-year-old child described how the parents hit each other, told the social worker she felt scared when they fought and did not want to go to her father's house because of the fights, saying, "'They hit, they cry. I can't take it anymore.'" (*Id.* at p. 130; see also *In re R.C.* (2012) 210 Cal.App.4th 930, 943-944 [jurisdiction under section 300, subdivision (b) supported by acts of domestic violence, repeated threats to kill the mother, domestic violence in the three-year-old child's presence, and the nine-year-old child's expressed fear of the father]; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 600 [child was placed at substantial risk of serious physical harm as a passenger in the car when father drove with one hand and used the other hand to hit and choke mother]; *In re E.B.* (2010) 184 Cal.App.4th 568, 571, 576 [children heard mother screaming when father struck her and showed signs of trauma and anxiety from violence perpetrated on them and mother].)

"As appellate courts have repeatedly stressed, '"[s]ubdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness."'" [Citations.]" (*In re Jesus M.*

12

(2015) 235 Cal.App.4th 104, 111-112.)  Here, the finding that the children are at substantial risk of serious physical harm is not supported by substantial evidence. (See *Daisy H.*, *supra*, 192 Cal.App.4th at p. 717 [evidence insufficient to support a finding that past or present domestic violence placed the children at a current substantial risk of physical harm where the violence occurred at least two years before the petition, the children showed no signs of physical abuse and were healthy, the children denied ever witnessing any violence and there was no evidence the incidents occurred in the children's presence].)  The jurisdictional finding under count b-1 is reversed.

2.      *Count b-2*

Count b-2 alleged that Mother was incapable of providing regular care for the children because she was under the influence of alcohol on June 5, 2013, and that the children were at risk of physical harm due to her alleged alcohol abuse. Jurisdiction under section 300, subdivision (b)'s provision regarding substance abuse "must necessarily include a finding that the parent at issue is a substance abuser.  [Citation.]"  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 764.)

The finding that Mother abused alcohol is not supported by substantial evidence.  Mother reported no substance abuse problems and had never been treated for alcohol or drug abuse.  Her parents had never seen any evidence of drug or alcohol abuse.  Paternal grandmother had never seen Mother appear drunk or under the influence of drugs.  The August 2014 police report made no mention of suspected alcohol use.  The only evidence of her use of alcohol is Father's statement that he and Mother had been drinking prior to the two incidents and the

13

DCFS summary of the June 2013 sheriff's report.[5]  In addition, Mother had one arrest for possession of a controlled substance.  But this is insufficient to prove that Mother was a substance abuser.[6]  There was no evidence showing, for example, that Mother "failed to fulfill [her] work obligations, suffered from any substance-related legal problems, drove [her] vehicle while under the influence of drugs, or used drugs to deal with social or interpersonal problems."  (*Rebecca C.*, *supra*, 228 Cal.App.4th at p. 726.)  Nor was there any evidence that Mother neglected her children or was unable to care for her children.

Moreover, "DCFS had to present evidence of a specific, nonspeculative and substantial risk to [the children] of serious physical harm."  (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; see also *Rebecca C., supra*, 228 Cal.App.4th at p. 728 [rejecting DCFS's argument that the mother's substance abuse presented a risk of harm simply because "'[t]he risk to a child being cared for by a parent under the influence of [methamphetamine, amphetamine and marijuana] is not speculative,'" stating that this argument "excises out of the dependency statutes the elements of causation and harm"]; *In re David M.* (2005) 134 Cal.App.4th 822, 830 [although the record showed that the mother suffered from a substance abuse problem and both parents had mental health issues, the agency "offered no evidence that these problems caused, or created a substantial risk of causing, serious harm" to the children].)  There is no such evidence here.  The children

---

**5**    The sheriff's report states that the deputy smelled alcohol on Father's breath but did not say the same about Mother.

**6**    DCFS argues that Father "detailed mother's lengthy and alarming marijuana use," but the record citations it provides do not support this argument.  The citations are to the police report from the August 2014 incident, the sheriff's report from the June 2013 incident, and a page in the jurisdiction/disposition report.  None of the record citations support this contention.

showed no signs of abuse or neglect. Instead, the children were clean and groomed, there were no problems with the apartment where they lived, and both the caseworker and the UFA assessor observed that the family appeared bonded and attached. DCFS has presented no evidence of a specific, nonspeculative, substantial risk of serious physical harm to the children.

As discussed above, DCFS has offered no evidence to establish that Mother abused substances and that the children were at substantial risk of serious harm due to her alleged substance abuse. The jurisdictional finding under count b-2 is reversed.

II. *Dispositional Findings*

"After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. [Citation.] At the dispositional hearing, the court must decide where the child will live while under the court's supervision. [Citation.]" (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145 (*Hailey T.*).) Mother contends that the dependency court's dispositional order removing the children from parental custody is not supported by substantial evidence. We agree.

In order to take a child from the parents' custody, section 361 requires the dependency court to find by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).) Section 361 further requires the court to "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home . . . ." (§ 361,

15

subd. (d).) "Section 361 requires that there be 'no reasonable means' of preventing removal." (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 293 (*Jasmine G.*).)

The clear and convincing standard "is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child. [Citations.] [¶] The elevated burden of proof for removal from the home at the disposition stage reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so. [Citations.] By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the 'bias of the controlling statute is on family preservation, *not* removal.' [Citation.] Removal 'is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent.' [Citation.]" (*Hailey T.*, *supra*, 212 Cal.App.4th at p. 146; see also *Jasmine G.*, *supra*, 82 Cal.App.4th at p. 284 ["'Because we so abhor the involuntary separation of parent and child, . . . the state may disturb an existing parent-child relationship only for strong reasons and subject to careful procedures.' [Citation.]"].)

"The standard of review of a dispositional order on appeal is the substantial evidence test. [Citation.] In assessing this assignment of error on appeal, the substantial evidence test remains the appropriate standard of review, 'bearing in mind the heightened burden of proof.' [Citation.] We consider the entire record to determine whether substantial evidence supports the juvenile court's findings. [Citation.] 'Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.' [Citation.]" (*Hailey T.*, *supra*, 212 Cal.App.4th at p. 146.)

16

As discussed above, the record contains no evidence that the children were ever victims of abuse. Even if there had been evidence of past abuse, "such evidence alone does not meet the clear and convincing standard of proof required to justify removal of a child from his or her parents' custody . . . . If it did, section 361, subdivision (c)(1) would be superfluous." (*Hailey T.*, *supra*, 212 Cal.App.4th at p. 147.)

For the reasons discussed above, we conclude that the record does not support findings that there was a substantial danger to the children if returned home and that there were no less drastic alternatives than removal to protect them. (§ 361, subd. (c)(1); see *Hailey T.*, *supra*, 212 Cal.App.4th at p. 147 [dispositional order not supported by substantial evidence where there was no evidence the child was a victim or abuse or suffered harm as a result of abuse of her brother].) Nor does the record indicate that the court "[made] a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home . . . ." (§ 361, subd. (d).) The dispositional order removing the children from Mother's custody is not supported by substantial evidence and therefore is reversed.

**DISPOSITION**

The judgment is reversed as to the jurisdictional findings against Mother under counts a-1, b-1, and b-2. The order requiring Mother to undergo drug testing is reversed. The dispositional order removing the children from Mother's custody is reversed. In all other respects the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.


We concur:


MANELLA, J.


COLLINS, J.